BERNER, APPELLANT, v. GELMAN ET AL., APPELLEES.*

(No. 1367—Decided November 21, 1956.)

*Messrs. Provenzo & Friedman,* for appellant.
*Mr. Dan K. Cook,* for appellees.

DOYLE, J.   This is an appeal on questions of law from a judgment of the Court of Common Pleas of Lorain County, which dismissed the amended petition of the plaintiff, who determined not to plead further following the sustaining of a demurrer to the pleading.

The plaintiff, David Berner, obviously is the appellant here.   He claims that he pleaded a cause of action, and that the court erred in its ruling.   To this claim we now direct our attention.

The amended petition charged, in substance, that on November 1, 1949, one Doris Gelman and "her heirs, executors, administrators and assigns" became named "lessor" in a lease of "the second and third floors together with the stairway leading to said second and third floors" of a building owned

*Motion to certify the record overruled, February 20, 1957.

by the said Doris Gelman. Arthur Braunstein and Frank Gary were the named lessees. The premises were leased for a term of one year, beginning November 1, 1949, with an option to the lessees of renewal for four additional years; the lessees exercised the option, and the lease was thereby extended to October 31, 1954. The lessees, with the permission of the lessor, Doris Gelman, assigned the lease to the plaintiff, David Berner, who used the premises for sleeping rooms, as had the original lessees.

On December 27, 1952, when the plaintiff, Berner, occupied the premises, they were damaged by fire, and ten of the rooms were rendered unfit for the purposes for which they were leased, or "for any other purpose." The fire occurred without the fault of any of the lessees.

The amended petition, continuing, pleaded the following provisions of the lease:

"It is mutually agreed between the parties hereto that if the said premises shall without fault or neglect on lessee's part be destroyed or so injured by the elements or other cause as to be unfit for occupancy and such destruction or injury could reasonably be repaired within thirty (30) days from the happening of such destruction or injury, then the lessee shall not be entitled to surrender possession of said premises nor shall lessee's liability to pay rent under this lease cease, without the mutual consent of the parties hereto; but in case of any such destruction or injury, the lessor shall repair the same with all reasonable speed and shall complete such repairs within 30 days from the happening of such injury; and if during such repairs the lessee shall thereby be deprived of the occupancy of any portion of said premises, a proportionate allowance shall be made to lessee from the rent, corresponding to the time during which, and to the premises of which, lessee shall be so deprived on account of the making of said repairs."

The amended petition under attack then continued by claiming that, although the fire damage could reasonably have been repaired within thirty days, Doris Gelman, upon demand, "wilfully failed, neglected and refused to repair said damage or cause the same to be repaired," or do anything to render the rooms fit for occupancy, thereby destroying the rental value.

The remainder of the pleading spoke as follows:

"Plaintiff says that the said Doris Gelman died testate on or about March 9, 1954, leaving the defendants herein as her sole heirs at law, and the devisees of said premises; that the defendants accepted said devise and entered into possession of said premises subject to the lease of the plaintiff, aforesaid; that the said defendants from the time of the death of said Doris Gelman—to wit, on March 9, 1954, to October 31, 1954— on which date plaintiff surrendered possession of said premises to the defendant, failed, refused, and neglected to repair said fire damage.

"Plaintiff further says that the net reasonable rental value to plaintiff of said premises as sleeping quarters from March 9, 1954, to October 31, 1954, was $4508.00; that the operation by plaintiff of said premises as sleeping rooms from March 9, 1954, to October 31, 1954, resulted in a loss to him of $1395.51; all to the damage of the plaintiff in the amount of $5903.51."

The amended petition ended by a prayer for damages in the amount set forth above.

It will be noted that the pleading made no claim for damages against the estate of Doris Gelman—it is directed against her "heirs at law and the devisees of said premises." No claim, however, could be made against the Gelman estate without a compliance with the so-called "nonclaim" statutes of the state. These pertinent statutes are:

Section 2117.06, Revised Code: "All creditors having claims against an estate shall present their claims to the executor or administrator in writing, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated. * * *"

Section 2117.07, Revised Code: "A claim which is not presented within nine months from the appointment of the executor or administrator shall be forever barred as to all parties, including devisees, legatees, and distributees and no payment shall be made nor any action maintained thereon * * *."

Section 2117.12, Revised Code: "When a claim against an estate has been rejected in whole or in part but not referred to referees, or when a claim has been allowed in whole or in

part and thereafter rejected, the claimant must commence an action on the claim, or that part thereof rejected, within two months after such rejection if the debt or that part thereof rejected is then due, or within two months after the same becomes due, or be forever barred from maintaining an action thereon. * * *.''

The pleading made no claim of a compliance with these statutes, and seemingly no claim was made against Doris Gelman during her lifetime, nor has any claim been made against her estate since her death. The action is, as stated, against the heirs and devisees alone, and is for damages accruing after the death of Doris Gelman, although the fire occurred more than a year before her death.

The appellant submits to this court the following questions:

''1. Did the lease, by its terms, require the defendants to repair the fire damage?

''2. Is the fire clause, quoted above, a covenant running with the land?

''3. Are the defendants bound by the fire clause, so that the obligation to repair is a continuing obligation, subjecting them to liability for failure to comply therewith, even though the damage to the premises occurred prior to their ownership thereof?''

It is profitable, we think, to direct the attention first to the Ohio statute in its relation to the covenant to repair.

Section 5301.11, Revised Code, stipulates: ''The lessee of a building which, without fault or neglect on his part, is destroyed or so injured as to be unfit for occupancy, is not liable to pay rent to the lessor or owner thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant. The lessee thereupon must surrender possession of such premises.''

Under the covenant in the lease, the lessee waived his statutory exemption from liability for the payment of rent. He remained in possession, and now undertakes to recover damages from the present defendants, after having failed to assert a claim against the original lessor (or her estate), during whose lifetime the breach to repair the fire damage within thirty days occurred.

It is urged by the appellants that the fire clause in the lease pleads a "covenant running with the land," and that "the defendants are bound by the fire clause so that the obligation to repair is a continuing obligation, subjecting the defendants to liability for failure to comply therewith, even though the premises were damaged prior to defendants' ownership thereof."

There can be no question that the covenant to repair the fire damage within thirty days was broken before the heirs came into ownership of the property, and we are therefore called upon to determine whether the covenant required the performance of a single act or a series of contemporaneous acts, or the performance of acts at different times; because it is a rule of long standing that, where a covenant touching demised premises requires the performance of a single act, or a series of contemporaneous acts and not the performance of acts at different subsequent times, such covenant will not run with the land after breach.

In cases of this nature, it is vital to bear in mind the distinction between covenants that are entire and such as are of a continuing nature.

The covenant in the pleading under consideration required the covenantor to repair the damage with all reasonable speed, and to complete the repairs within thirty days from the time of the fire. This covenant required the performance of a single act. At the end of thirty days, the covenant was breached, did not run with the land after the breach, and of course was breached long before the title came to the defendants. As a consequence thereof, the amended petition failed to state a cause of action against these defendants.

See: 5 Restatement of the Law of Property, Section 530; *Gerzebek* v. *Lord,* 33 N. J. Law, 240; *Stuyvesant* v. *Mayor et al.,* 11 Paige, 414.

*Judgment affirmed.*

STEVENS, P. J., and HUNSICKER, J., concur.